IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHARLES D. SMITH, etc., )
 )
        Plaintiff, )
 )
v. ) No. 05 C 339
 )
CONDELL MEDICAL CENTER, et al., )
 )
        Defendants. )

MEMORANDUM OPINION AND ORDER

Merck & Co., Inc. ("Merck") has just filed a Notice of Removal ("Notice"), seeking to bring this negligence action against Merck and eight other defendants to this District Court from its place of origin in the Circuit Court of Cook County. Because federal subject matter jurisdiction is patently lacking, however, this Court sua sponte remands this action to the state court.

In so ruling, this Court does not rely upon--although it notes--Merck's noncompliance with this District Court's LR 81.2, which prescribes the procedure to be followed where (as here) a plaintiff cannot or does not set out an ad damnum that establishes the requisite amount in controversy for diversity of citizenship purposes (Merck's asserted basis for removal). It also eschews detailed comment on Merck's clear noncompliance, in setting out no fewer than 45 (!!) purported affirmative defenses ("ADs") in its Answer filed contemporaneously with the Notice, with the requirements of Fed. R. Civ. P. 8(c) and the

corresponding caselaw as to the pleading of ADs (in that respect, see App. ¶5 to State Farm Mut. Auto. Ins. Co. v. Riley, 199 F.R.D. 276, 279 (N.D. Ill. 2001)). Finally, this Court of course understands Merck's desire to centralize the handling of the hundreds of lawsuits against it around the country that stem from the use of its now withdrawn Vioxx product--but that desire cannot justify its counsel's apparent effort to treat every such lawsuit as being within the jurisdictional province of the federal courts.

Instead this Court looks to Merck's unacceptable attempt to shoehorn itself into a removal posture despite the fact that the eight other defendants' sharing of Illinois citizenship with the Illinois-citizen plaintiff destroys diversity at the outset. To that end Merck would have it that all of those defendants have been fraudulently joined, so that their citizenship can simply be ignored in the diversity analysis.

But that is just plain wrong--look at all of the defendants who or that are sued for assertedly negligent conduct <u>other than prescribing Vioxx</u>: thus Complaint Count I ¶¶4-9[1] plausibly ascribes such negligent conduct to defendant Condell Medical Center ("Condell"), where the two surgeries that ultimately led

---

[1] Because this opinion sets out only a summary reference to and characterization of the Complaint's allegations, a photocopy of the Complaint itself (which is attached to the Notice as its Ex. 3) is also attached as an exhibit here.

to the death of plaintiff's decedent Mary Armour were performed; Complaint Count II ¶¶4-9 plausibly ascribes such negligent conduct to defendants Victory Memorial Hospital and Dr. Robert Koch even before the decedent's transfer to Condell; Complaint Count III ¶¶4-9 plausibly ascribes to Dr. Fahd Jajeh and his corporation asserted medical malpractice in the course of the surgery, again having nothing at all to do with the prescription of Vioxx; and Count IV ¶¶4-8 plausibly ascribes medical malpractice to Dr. Robert Kemmerer in connection with the second surgery, once more wholly without reference to Vioxx. Indeed, the only codefendants linked in any way with Vioxx are a Dr. Max Goldschmidt and Rosalind Franklin University of Medicine and Science, named in Complaint Count V, which addresses treatment that had been afforded the decedent before the surgeries adverted to in the other counts.

In sum, Merck's assertion of fraudulent joinder can only be viewed as frivolous. Its counsel's myopic view that it is therefore the only target of this lawsuit is flatly belied by the Complaint. It is an understatement to say that "it appears that the district court lacks subject matter jurisdiction" (28 U.S.C. §1447(c)). As called for by that statute, this action is remanded to the Circuit Court of Cook County. And as permitted by this District Court's LR 81.2, the certified copy of the order of remand shall be mailed by the Clerk of this District Court

3

forthwith.

_____
Milton I. Shadur
Senior United States District Judge

Date: January 21, 2005

FIRM NO. 40821

047112 RLB:bs 11/18/04

STATE OF ILLINOIS )
) SS.
COUNTY OF COOK )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| CHARLES D. SMITH, Special Administrator of the Estate of MARY ARMOUR, Deceased, Plaintiff, | ) ) ) ) | |
| v. | ) ) | |
| CONDELL MEDICAL CENTER, an Illinois corporation, VICTORY MEMORIAL HOSPITAL, an Illinois corporation, ROBERT KOCH, D.O., FAHD JAJEH, M.D., DRS. JAJEH AND KOCH, S.C., an Illinois corporation, ROBERT KEMMERER, M.D., MAX W. GOLDSCHMIDT, M.D., ROSALIND FRANKLIN UNIVERSITY OF MEDICINE AND SCIENCE, an Illinois corporation, and MERCK & CO., INC., a corporation, Defendants. | ) ) ) ) ) ) ) ) ) ) ) | NO. 04L 013031 CALENDAR C MED. MAL PRACTICE |

## COMPLAINT AT LAW

NOW COMES the Plaintiff, CHARLES D. SMITH, Special Administrator of the Estate of MARY ARMOUR, Deceased, by and through his Attorneys, RICHARD L. BERDELLE, JR., P.C., and for his Complaint at Law against the Defendants, CONDELL MEDICAL CENTER, an Illinois corporation, VICTORY MEMORIAL HOSPITAL, an Illinois corporation, ROBERT KOCH, D.O., FAHD JAJEH, M.D., DRS. JAJEH AND KOCH, S.C., an Illinois corporation, ROBERT KEMMERER, M.D., MAX W. GOLDSCHMIDT, M.D., ROSALIND FRANKLIN UNIVERSITY OF MEDICINE AND SCIENCE, an Illinois corporation, and MERCK & CO, INC., a corporation, states as follows:

EXHIBIT 3

## Count I
## (Condell Medical Center)

1. At all times herein referred to, the Defendant, CONDELL MEDICAL CENTER, an Illinois corporation (hereinafter: CONDELL), owned and operated a general hospital facility for the provision of emergency, medical and surgical care to its patients, through its employed physician, nursing and allied health care personnel; as such CONDELL owed a duty to provide that emergency, medical, surgical and allied health care in accordance with the standard of care applicable to such general hospital facilities and, in particular, owed such a duty to Plaintiff's decedent, MARY ARMOUR.

2. At all times relevant, CONDELL employed nursing staff to provide nursing care to its patients consistent with the standards of care in the community and the nurses at CONDELL owed a duty to provide that level of care to Plaintiff's decedent, MARY ARMOUR.

3. On or about November 22, 2002, Plaintiff's decedent, MARY ARMOUR, was admitted to CONDELL for chest pain complaints.

4. On November 22, 2002, a cardiac catheterization and angioplasty was performed on Plaintiff's decedent.

5. Plaintiff's decedent experienced deterioration of her mental status and vital signs in the hours following the cardiac catheterization and angioplasty.

6. The nurse employees of CONDELL had the responsibility to monitor Plaintiff's decedent's vital signs and mental status and promptly report abnormalities to the physicians in the hours after the cardiac catheterization and angioplasty.

7. Plaintiff's decedent lapsed into a coma for a period of hours before surgery was performed to repair a laceration injury to the femoral artery.

8. Despite surgery to repair the injury to Plaintiff's decedent's femoral artery, she continued to experience hemodynamic instability and she expired on November 23, 2002.

9. The Defendant, CONDELL, through its employee nurses, was then and there negligent in the following respects:

    a. failed to adequately monitor MARY ARMOUR's vital signs in the hours after the cardiac catheterization/angioplasty procedure;

    b. failed to notify MARY ARMOUR's physicians with regard to deterioration in her medical condition in the hours after the cardiac catheterization/angioplasty procedure;

    c. failed to arrange for physicians to examine and evaluate MARY ARMOUR in a timely manner.

10. As a direct and proximate result of the foregoing negligent acts or omissions, Plaintiff's decedent, MARY ARMOUR, died on November 23, 2002.

11. MARY ARMOUR is survived by her son, CHARLES D. SMITH, and her daughter, MILITON YVETTE SMITH, who have sustained pecuniary injury as a result of the loss of the society and companionship of their deceased mother.

12. Attached hereto is the Attorney's Affidavit required by 735 ILCS 5/2-622(a)(2).

WHEREFORE, Plaintiff, CHARLES D. SMITH, Special Administrator of the Estate of MARY ARMOUR, Deceased, prays for the entry of judgment in his favor and against the Defendant, CONDELL MEDICAL CENTER, an Illinois corporation, in an amount substantially in excess of Fifty Thousand ($50,000.00) Dollars, which will fairly and justly compensate for the injuries sustained plus the cost of this suit.

## Count II
### (Victory Memorial Hospital and Robert Koch, D.O.)

1. At all time herein referred to, Defendant, VICTORY MEMORIAL HOSPITAL, an Illinois corporation (hereinafter: VICTORY), owned and operated a general hospital facility for the provision of emergency, medical and surgical care to its patients, through its employed physician staff including the Defendant, ROBERT KOCH, D.O.

3

2. At all times herein involved, Defendant, ROBERT KOCH, D.O. (hereinafter: KOCH), was a physician licensed to practice in the State of Illinois who was practicing in his specialty of cardiology; as such, he had a duty to provide care consistent with the standard of care for reasonably well-qualified cardiologists and, in particular, he owed such a duty to Plaintiff's decedent, MARY ARMOUR.

3. At all times that KOCH provided care to MARY ARMOUR, he was an employee of VICTORY and was acting within the scope and course of that employment.

4. On November 22, 2002, MARY ARMOUR presented to VICTORY with acute chest pain complaints.

5. KOCH was called in consultation to see MARY ARMOUR in the VICTORY Emergency Room.

6. On November 22, 2002, KOCH arranged for MARY ARMOUR to be transferred to CONDELL for cardiac catheterization.

7. On November 22, 2002, MARY ARMOUR developed hemodynamic instability after the catheterization procedure.

8. On November 23, 2002, MARY ARMOUR died.

9. The Defendants, VICTORY and KOCH, were then and there negligent in the following respects:

    a. failed to properly evaluate MARY ARMOUR on November, 22, 2002;

    b. failed to properly and timely treat MARY ARMOUR's condition on November 22, 2002.

10. As a direct and proximate result of the foregoing negligent acts or omissions, Plaintiff's decedent, MARY ARMOUR, died on November 23, 2002.

4

11. MARY ARMOUR is survived by her son, CHARLES D. SMITH, and her daughter, MILITON YVETTE SMITH, who have sustained pecuniary injury as a result of the loss of the society and companionship of their deceased mother.

12. Attached hereto is the Attorney's Affidavit required by 735 ILCS 5/2-622(a)(2).

WHEREFORE, Plaintiff, CHARLES D. SMITH, Special Administrator of the Estate of MARY ARMOUR, Deceased, prays for the entry of judgment in his favor and against the Defendants, VICTORY MEMORIAL HOSPITAL, an Illinois corporation, and ROBERT KOCH, D.O., in an amount substantially in excess of Fifty Thousand ($50,000.00) Dollars, which will fairly and justly compensate for the injuries sustained plus the cost of this suit.

## Count III
### (Fahd Jajeh, M.D. and Drs. Jajeh and Koch, S.C.)

1. At all times herein referred to, Defendant, FAHD JAJEH, M.D. (hereinafter: JAJEH), was a physician licensed to practice in the State of Illinois who was so practicing within the specialty of cardiology; as such, he had a duty to provide care and treatment consistent with the standard of care for reasonably well-qualified cardiologists and, in particular, he owed such a duty to Plaintiff's decedent, MARY ARMOUR.

2. At all times he was involved in the care and treatment of Plaintiff's decedent, JAJEH was an employee of Defendant, DRS. JAJEH AND KOCH, S.C., an Illinois corporation (hereinafter: DOCTORS), and he was acting within the scope and course of that employment at all times he was providing care to MARY ARMOUR.

3. On November 22, 2002, Plaintiff's decedent, MARY ARMOUR came under the attending care of JAJEH at CONDELL for the performance of a cardiac catheterization and angioplasty.

4. JAJEH performed the cardiac catheterization and angioplasty on MARY ARMOUR on November 22, 2002.

5

5. MARY ARMOUR sustained a laceration injury to her femoral artery during the aforesaid procedure.

6. As a result of the laceration injury, Plaintiff's decedent, MARY ARMOUR developed blood loss that produced hemodynamic instability.

7. MARY ARMOUR's medical condition further deteriorated in the hours after the cardiac catheterization and angioplasty.

8. Surgery was performed to repair the laceration injury to the femoral artery, but MARY ARMOUR expired on November 23, 2002.

9. The Defendants, JAJEH and DOCTORS, were then and there negligent in the following respects:

   a. negligently performed the cardiac catheterization/angioplasty procedure on November 22, 2002;

   b. created a laceration tear in the femoral artery during the cardiac catheterization/angioplasty procedure on November 22, 2002;

   c. failed to diagnose the injury to the patient's femoral artery in a timely manner;

   d. failed to properly treat the injury to the patient's femoral artery in a timely manner;

   e. failed to arrange for appropriate consultation for the femoral artery injury.

10. As a direct and proximate result of the foregoing negligent acts or omissions, Plaintiff's decedent, MARY ARMOUR, died on November 23, 2002.

11. MARY ARMOUR is survived by her son, CHARLES D. SMITH, and her daughter, MILITON YVETTE SMITH, who have sustained pecuniary injury as a result of the loss of the society and companionship of their deceased mother.

12. Attached hereto is the Attorney's Affidavit required by 735 ILCS 5/2-622(a)(2).

WHEREFORE, Plaintiff, CHARLES D. SMITH, Special Administrator of the Estate of MARY ARMOUR, Deceased, prays for the entry of judgment in his favor and against the Defendants, FAHD JAJEH, M.D., and DRS. JAJEH AND KOCH, S.C., an Illinois corporation, in an amount substantially in excess of Fifty Thousand ($50,000.00) Dollars, which will fairly and justly compensate for the injuries sustained plus the cost of this suit.

## Count IV
### (Robert Kemmerer, M.D.)

1. At all times herein involved, Defendant, ROBERT KEMMERER, M.D. (hereinafter: KEMMERER), was a physician licensed to practice in the State of Illinois who was practicing in his specialty of surgery; as such, he had a duty to provide care consistent with the standard of care for reasonably well-qualified surgeons and, in particular, he owed such a duty to Plaintiff's decedent, MARY ARMOUR.

2. On November 22, 2002, MARY ARMOUR was admitted to CONDELL with acute chest pain complaints.

3. On November 22, 2002, MARY ARMOUR underwent cardiac catheterization at CONDELL.

4. On November 22, 2002, MARY ARMOUR developed hemodynamic instability after the catheterization procedure.

5. Defendant, KEMMERER, was called in consultation to evaluate MARY ARMOUR with regard to hemodynamic instability and retroperitoneal bleeding on November 22, 2002.

6. Surgery was performed by KEMMERER to repair the laceration injury to the femoral artery, but MARY ARMOUR expired on November 23, 2002.

7. The Defendant, KEMMERER, was then and there negligent in the following respects:

a. failed to diagnose the patient's arterial injury in a timely manner;

b. failed to repair the patient's arterial injury in a timely manner.

8. As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Plaintiff's decedent, MARY ARMOUR, died on November 23, 2002.

9. MARY ARMOUR is survived by her son, CHARLES D. SMITH, and her daughter, MILITON YVETTE SMITH, who have sustained pecuniary injury as a result of the loss of the society and companionship of their deceased mother.

10. Attached hereto is the Attorney's Affidavit required by 735 ILCS 5/2-622(a)(2).

WHEREFORE, Plaintiff, CHARLES D. SMITH, Special Administrator of the Estate of MARY ARMOUR, Deceased, prays for the entry of judgment in his favor and against the Defendant, ROBERT KEMMERER, M.D., in an amount substantially in excess of Fifty Thousand ($50,000.00) Dollars, which will fairly and justly compensate for the injuries sustained plus the cost of this suit.

### Count V
### (Max W. Goldschmidt, M.D., and Rosalind Franklin University of Medicine and Science)

1. At all times herein referred to, Defendant, MAX W. GOLDSCHMIDT, M.D. (hereinafter: GOLDSCHMIDT), was a physician licensed to practice medicine in the State of Illinois who was so practicing as a primary care physician; as such, he had a duty to provide medical care and treatment consistent with the standards of care of reasonably well-qualified primary care physicians and, in particular, he owed such a duty to Plaintiff's decedent, MARY ARMOUR.

2. At all times herein referred to, Defendant, ROSALIND FRANKLIN UNIVERSITY OF MEDICINE AND SCIENCE, an Illinois corporation, formerly known as Finch University of Health Sciences/The Chicago Medical School (hereinafter: UNIVERSITY), owned and operated an outpatient general medical clinic that provided care to patients in the community through its employed physician and nursing staff.

3. At all times herein relevant, Defendant, GOLDSCHMIDT, was an employee of UNIVERSITY at all times he provided medical care and treatment to Plaintiff's decedent, MARY ARMOUR, and he was acting within the scope and course of that employment while providing medical care to MARY ARMOUR.

4. On and after January 28, 2002, MARY ARMOUR came under GOLDSCHMIDT's attending care for various medical problems including osteoarthritis, fluid retention, hypercholesterolemia and occasional chest pain complaints.

5. GOLDSCHMIDT prescribed medications including Vioxx for arthritis and hydrochlorothiazide for fluid retention.

6. On November 22, 2002, Plaintiff's decedent was admitted to CONDELL for acute myocardial infarction.

7. Plaintiff's decedent developed hemodynamic instability during the evaluation and workup of her myocardial infarction.

8. Plaintiff's decedent expired on November 23, 2002.

9. The Defendants, GOLDSCHMIDT and UNIVERSITY, were then and there negligent in the following respects:

    a. failed to diagnose MARY ARMOUR's coronary artery disease in a timely manner;

    b. failed to properly treat MARY ARMOUR's coronary artery disease in a timely manner.

10. As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Plaintiff's decedent, MARY ARMOUR, died on November 23, 2002.

11. MARY ARMOUR is survived by her son, CHARLES D. SMITH, and her daughter, MILITON YVETTE SMITH, who have sustained pecuniary injury as a result of the loss of the society and companionship of their deceased mother.

12. Attached hereto is the Attorney's Affidavit required by 735 ILCS 5/2-622(a)(2).

WHEREFORE, Plaintiff, CHARLES D. SMITH, Special Administrator of the Estate of MARY ARMOUR, Deceased, prays for the entry of judgment in his favor and against the Defendants, MAX W. GOLDSCHMIDT, M.D., and ROSALIND FRANKLIN UNIVERSITY OF MEDICINE AND SCIENCE, an Illinois corporation, in an amount substantially in excess of Fifty Thousand ($50,000.00) Dollars, which will fairly and justly compensate for the injuries sustained plus the cost of this suit.

## Count VI
### (Negligence – Merck & Co, Inc.)

1. At all times relevant, Plaintiff's decedent, MARY ARMOUR, was a resident of Lake County in the State of Illinois.

2. At all times relevant, Defendant, MERCK & CO., INC., a corporation (hereinafter: MERCK), was a corporation incorporated in the State of New Jersey with its principal place of business in the State of New Jersey.

3. At all times relevant, MERCK was doing and transacting business in Cook County in the State of Illinois.

4. At all times relevant to this action, MERCK researched, developed, designed, manufactured, produced, sold and marketed a pharmaceutical drug known as Vioxx.

5. At all times relevant to this action, MERCK knew that Vioxx would be prescribed by physicians to patients and those patients would ingest Vioxx.

6. On January 28, 2002 and for some time prior thereto, Plaintiff's decedent, MARY ARMOUR, was prescribed Vioxx by Defendant, GOLDSCHMIDT, and MARY ARMOUR began ingesting Vioxx.

7. At all times relevant to this action, MERCK had a duty to Plaintiff's decedent, MARY ARMOUR, to exercise reasonable and ordinary care in the research, development, design, manufacturing, production, selling and marketing of Vioxx to prevent Vioxx from causing injury to patients who would be prescribed Vioxx and would ingest Vioxx.

8. On January 28, 2002 and for some time prior thereto, Defendant, MERCK, then and there committed one or more of the following acts and/or omissions:

    a. negligently and carelessly researched Vioxx;

    b. negligently and carelessly developed Vioxx;

    c. negligently and carelessly designed Vioxx;

    d. negligently and carelessly manufactured Vioxx;

    e. negligently and carelessly produced Vioxx;

    f. negligently and carelessly sold Vioxx;

    g. negligently and carelessly marketed Vioxx;

    h. negligently and carelessly failed to warn patients, including Plaintiff's decedent, MARY ARMOUR of the dangers associated with ingesting Vioxx;

    i. negligently and carelessly failed to warn physicians who prescribed Vioxx to patients, including Defendant, GOLDSCHMIDT, who prescribed Vioxx to Plaintiff's decedent, MARY ARMOUR, of the dangers associated with ingesting Vioxx.

9. As a direct and proximate result of one or more of the aforementioned acts or omissions committed by Defendant, MERCK, Plaintiff's decedent ingested Vioxx, thereby sustaining an injury.

10. On or about November 22, 2002, MARY ARMOUR suffered an acute myocardial infarction.

11. As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Plaintiff's decedent, MARY ARMOUR, experienced an acute

11

myocardial infarction and died on November 23, 2002, during the evaluation and treatment of the myocardial infarction.

12. MARY ARMOUR is survived by her son, CHARLES D. SMITH, and her daughter, MILITON YVETTE SMITH, who have sustained pecuniary injury as a result of the loss of the society and companionship of their deceased mother.

WHEREFORE, Plaintiff, CHARLES D. SMITH, Special Administrator of the Estate of MARY ARMOUR, Deceased, prays for the entry of judgment in his favor and against the Defendant, MERCK & CO., INC., a corporation, in an amount substantially in excess of Fifty Thousand ($50,000.00) Dollars, which will fairly and justly compensate for the injuries sustained plus the cost of this suit.

### Count VII
### (Product Liability – Merck & Co, Inc.)

1-7. Plaintiff restates and realleges paragraphs 1 through and including 7 of Count VI of this Complaint at Law, as and for paragraphs 1 through and including 7 of this Count VII, as though fully set forth herein.

8. That the Defendant introduced the product into the stream of commerce in a manner that rendered Vioxx unreasonably dangerous in one or more of the following respects:

   a. Vioxx use presented a significant risk of heart attack for patients taking the drug;

   b. failed to contain a warning that Vioxx use presented a significant risk of heart attack.

9. Defendant, GOLDSCHMIDT, prescribed Vioxx to Plaintiff's decedent, MARY ARMOUR, with the reasonable expectation that Vioxx would relieve Plaintiff's decedent's pain and inflammation.

12

10. Defendant, GOLDSCHMIDT did not reasonably expect the Vioxx he prescribed to Plaintiff's decedent to cause damage and injury to the heart of MARY ARMOUR.

11. Plaintiff's decedent, MARY ARMOUR, ingested Vioxx with the reasonable expectation that Vioxx would relieve her pain and inflammation.

12. Plaintiff's decedent, MARY ARMOUR, did not reasonably expect the ingestion of Vioxx to cause damage and injury to her heart.

13. As a direct and proximate result of one or more of the foregoing unreasonably dangerous conditions, Plaintiff's decedent, MARY ARMOUR, experienced an acute myocardial infarction on November 22, 2002 and died on November 23, 2002.

12. MARY ARMOUR is survived by her son, CHARLES D. SMITH, and her daughter, MILITON YVETTE SMITH, who have sustained pecuniary injury as a result of the loss of the society and companionship of their deceased mother.

WHEREFORE, Plaintiff, CHARLES D. SMITH, Special Administrator of the Estate of MARY ARMOUR, Deceased, prays for the entry of judgment in his favor and against the Defendant, MERCK & CO., INC., a corporation, in an amount substantially in excess of Fifty Thousand ($50,000.00) Dollars, which will fairly and justly compensate for the injuries sustained plus the cost of this suit.

RICHARD L. BERDELLE, JR., P.C.

BY: *[signature]*
RICHARD L. BERDELLE, JR.
Attorney for Plaintiff

Attorney Number 40821
Richard L. Berdelle, Jr.
RICHARD L. BERDELLE, JR., P.C.
Attorney for Plaintiff
Two North LaSalle Street – Suite 700
Chicago, Illinois 60602
(312) 726-0400